FRANCISCO CARRANZA, ORQUIDEA
ELIZABETH JUAREZ RIVERA; ORQUIDEA
DAYRINA RIVERA PEÑA; *and*
JENNYFER DAYRINA JUAREZ RIVERA

    *Plaintiffs*

**V.**

SAM GALLUZZI

    *Defendant.*

CASE NO.

Jury Demand

## COMPLAINT

Comes now ORQUIDEA ELIZABETH JUAREZ RIVERA, ORQUIDEA DAYRINA RIVERA PEÑA, FRANCISCO CARRANZA, and JENNYER DAYRINA JUAREZ RIVERA and represented by attorneys BRAZIL CLARK, PLLC, and for their complaint would show:

### PRELIMINARY STATEMENT

1. This is a claim for relief pursuant to 42 U.S.C. §1983 for False Arrest in violation the Fourth Amendment to the United States Constitution and Unlawful Search and Seizure in violation of the Fourth Amendment to the United States Constitution, made applicable to the State of Tennessee and those acting under color of state law by the Fourteenth Amendment to the United States Constitution.

Case 3:23-cv-00758    Document 1    Filed 07/26/23    Page 1 of 18 PageID #: 1

## JURISDICTION

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because this civil action is brought for the redress of deprivations of constitutional rights protected by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

## VENUE

3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because the Defendant resides in this judicial district and the acts or omissions giving rise to this complaint occurred in this judicial district.

## PARTIES

4. Plaintiff Orquidea Elizabeth Juarez Rivera is a longtime resident of Davidson County, Tennessee.

5. Plaintiff Orquidea Dayrina Rivera Peña is a longtime resident of Davidson County, Tennessee.

6. Plaintiff Francisco Carranza is a longtime resident of Davidson County, Tennessee.

7. Plaintiff Jennyfer Dayrina Juarez Rivera is a longtime resident of Davidson County, Tennessee.

8. Defendant Sam Galluzzi, (hereinafter referred to as "Special Agent Galluzzi") is a Special Agent for the Tennessee Bureau of Investigation and is being sued solely in his individual capacity.

## FACTS

9. Francisco Carranza, Orquidea Elizabeth Juarez Rivera, Orquidea Dayrina Rivera Peña, and Jennyfer Dayrina Juarez Rivera all reside at 2248 Preserve Circle, Antioch, TN 37013.

10. On November 16, 2022, Special Agent Galluzzi provided a sworn affidavit in support of a search warrant for the address of 2248 Preserve Circle, Antioch, Davidson County Tennessee 37013. **Attach copy <u>Exhibit 1 – Search Warrant.</u>**

11. Upon information and belief, the sworn affidavit provided by Special Agent Sam Galluzzi contained false information regarding the residents at 2248 Preserve Circle, Antioch, TN 37013, specifically including that someone named "Francisco Luis" or "Francisco Rivera" lived there.

12. Upon information and belief, Special Agent Sam Galluzzi's affidavit contained the false statement that large quantities of illegal drugs were likely to be found at the 2248 Preserve Circle, Antioch, TN 37013 residence.

13. Upon information and belief, Special Agent Sam Galluzzi's affidavit contained the false statement that one or more residents of 2248 Preserve Circle, Antioch, TN 37013 were engaged in money laundering.

14. In the alternative, upon information and belief, Special Agent Sam Galluzzi intentionally or recklessly omitted material information from the search warrant affidavit, including but not limited to the fact that he had no evidence that Francisco Carranza, Orquidea Elizabeth Juarez Rivera,

Page **3** of **18**

Orquidea Dayrina Rivera Peña, and Jennyfer Dayrina Juarez Rivera were involved in drug trafficking or money laundering.

15. Upon information and belief, Special Agent Sam Galluzzi identified all Plaintiffs to other law enforcement officers and agencies as targets for searches and seizures.

16. Upon information and belief, Special Agent Sam Galluzzi organized and directed a multi-agency law enforcement operation for the purpose of searching and seizing the Plaintiffs and their property on November 16, 2022.

17. Upon information and belief, Special Agent Sam Galluzzi failed to perform any due diligence to verify whether "Francisco Luis" or "Francisco Rivera" resided at 2248 Preserve Circle, Antioch, TN 37013.

18. On November 16, 2022 Orquidea Elizabeth Juarez Rivera (hereinafter referred to as "Ms. Rivera") was driving from a shopping mall to her place of work in Davidson County at approximately 1:45 p.m. Ms. Rivera did not speed, nor did she commit any other traffic violations.

19. During Ms. Rivera's trip to work, two law enforcement officers initiated a traffic stop and pulled Ms. Rivera over.

20. Upon information and belief, the officers pulled Ms. Rivera over because Defendant Galluzzi identified her as a participant in criminal activity related to illegal drug trafficking and Defendant Galluzzi directed them to seize her and/or her vehicle.

21. At the time Defendant Galluzzi identified the Plaintiffs to other law enforcement officers as participants in criminal activity related to illegal drug trafficking, he had no knowledge of facts or circumstances which could provide a reasonable basis for the allegation.

22. One of the officers approached Ms. Rivera's car, asked for her license, and claimed to have stopped her based on a traffic violation.

23. At the time Ms. Rivera was pulled over, she was obeying all traffic laws.

24. At the time Ms. Rivera was pulled over, no facts or circumstances existed that could provide reasonable suspicion of criminal activity.

25. At the time Ms. Rivera was pulled over, no facts or circumstances existed which could provide probable cause to conduct a search or seizure of Ms. Rivera or her vehicle.

26. At the time Ms. Rivera was pulled over, officers did not have a warrant to search or seize Ms. Rivera or her vehicle.

27. During the stop, Ms. Rivera attempted to call her mother.

28. The law enforcement officers ordered Ms. Rivera out of her vehicle and stated that she was under arrest.

29. The two officers asked Ms. Rivera if she sold drugs. Ms. Rivera said "no."

30. Officers placed Ms. Rivera in handcuffs and put her in the back of the police cruiser.

31. Officers then proceeded to conduct a K-9 search on Ms. Rivera's vehicle. No drugs, weapons, or other contraband was found within Ms. Rivera's vehicle.

32. Officers searched Ms. Rivera's vehicle for approximately forty (40) minutes.

33. When officers did not find anything within Ms. Rivera's car, instead of releasing her, Officer's drove Ms. Rivera, still handcuffed and detained in the back of the police cruiser, to her residence at 2248 Preserve Circle, Antioch, TN 37013, Davidson County (hereinafter referred to as "the Residence").

34. Officers left Ms. Rivera detained in the back of the police cruiser, handcuffed, as they proceeded to search her residence.

35. Ms. Rivera observed Officers deploy an explosive device to breach the doorway and enter the residence.

36. During this time, Francisco Carranza (hereinafter referred to as "Mr. Carranza"), father of Ms. Rivera, was on his way to the Residence at approximately 4:30 p.m.

37. As Mr. Carranza approached the house, he observed approximately fifty (50) law enforcement officers and fifteen (15) law enforcement vehicles on the street leading up to the Residence.

38. Mr. Carranza left his vehicle to inquire what was happening, at which point a police officer drew a firearm and pointed it at Mr. Carranza, ordering him to get on the ground.

39. Mr. Carranza attempted to get on the ground but told officers that he had a knee injury which made it hard for him to lower onto the ground.

40. Officers ordered Mr. Carranza to get inside his vehicle and ordered him not to leave.

41. Officers asked Mr. Carranza if he knew a "Francisco Rivera" or "Francisco Luis". Mr. Carranza stated that he did not know who that was.

42. Defendant Sam Galluzzi knew or reasonably should have known that no person named "Francisco Rivera" or "Francisco Luis" resided at the Plaintiffs' residence.

43. Mr. Carranza remained in his vehicle under the impression he could not leave as law enforcement searched the Residence.

44. Mr. Carranza called his wife Orquidea Dayrina Rivera Peña (hereinafter referred to as "Ms. Peña") to tell her what was happening.

45. Ms. Peña was shopping with her other daughter, Jennyfer Dayrina Juarez Rivera, when she received a frantic phone call from Mr. Carranza stating that law enforcement officers were at their Residence and that their daughter, Ms. Rivera, was arrested in the back of a police car.

46. Ms. Peña and Ms. Jennyfer Rivera immediately left to go to their home.

47. Ms. Peña and Ms. Jennyfer Rivera arrived at the house at approximately 5:00 p.m.

48. Upon arriving at the Residence, law enforcement officers immediately approached Ms. Peña's vehicle and ordered her and Ms. Jennyfer Rivera not to leave the vehicle.

49. Ms. Peña asked law enforcement officers why they were searching the Residence. Officers stated that she and her family were being investigated for selling drugs and money laundering.

50. Ms. Peña and Ms. Jennyfer Rivera stayed in their vehicle, under the impression they could not leave.

51. At approximately 7:00 p.m. law enforcement realized that information provided in the search warrant was incorrect and the wrong residence was being searched.

52. Law enforcement approached Mr. Carranza at approximately 7:00 p.m. and told him that they were sorry, gave him a search warrant and took a photograph of Mr. Carranza with a search warrant.

53. Ms. Rivera sat handcuffed within the back of the patrol cruiser for approximately three (3) hours.

54. Around approximately 7:00 pm, officers released Ms. Rivera and apologized to her as well.

55. Mr. Carranza asked law enforcement if he could enter his residence.

56. Law enforcement prohibited Mr. Carranza, Ms. Rivera, Ms. Jennyfer River, and Ms. Peña from entering their residence for another two (2) hours.

57. During the entirety of the search, Mr. Carranza, Ms. Peña, and Ms. Jennyfer Rivera were confined to their vehicles, unable to leave for approximately two and a half hours.

58. Even though Officers finished searching the residence, Ms. Rivera, Mr. Carranza, Ms. Peña and Ms. Jennyfer Rivera (collectively referred to as "the Carranza Family") were not allowed into the residence until approximately 9:00 p.m.

59. Upon being allowed back into the Residence, the Carranza Family discovered extensive damage to their residence.

60. Upon information and belief, Defendant Galluzzi directed the actions of the law enforcement officers who participated in the searches and seizures of the plaintiffs and their home on November 16, 2022.

61. Defendant Galluzzi directly participated in the raid of the Plaintiffs' residence.

62. The front door of the Residence was blasted off with explosives, leaving black residue and damage on the outside of the house, and the door unable to be reattached to the door frame. **Exhibit 2 – Photographs, p. 1-9.**

63. The living room was torn to pieces leaving it disheveled and damage to living room furniture. ***Id.*, p.10-16.**

64. The pull-down attic staircase was broken by officers. ***Id.*, p. 17.**

65. The carpet and flooring of the residence was damaged with residue from explosives used to blow off the doors. ***Id.*, p. 18-22.**

66. The door leading to the deck and backyard of the residence was forcibly removed and damage occurred to both the door and door frame. **Id. - 25-31.**

67. Furniture, clothing, and other objects owned by Ms. Rivera, Mr. Carranza, Ms. Peña, and Ms. Jennyfer Rivera were ripped apart and thrown around on the floors, leaving the house in complete disarray. **Id. - 31-50.**

68. The bedrooms of Ms. Rivera, Mr. Carranza, Ms. Peña, and Ms. Jennyfer Rivera were torn apart, leaving their rooms and personal belongings in complete disarray. **Id. – 31-50.**

69. Defendant Galluzzi authorized, encouraged, and approved of the searches and seizures conducted against the Plaintiffs and their property on November 16, 2023.

70. Defendant Galluzzi authorized and approved of the manner in which the searches and seizures were performed against the Plaintiffs and their property on November 16, 2023.

71. Since the incident on November 16, 2022, each Plaintiff suffers from fear and anxiety as a result of the November 16, 2022 events.

# FIRST CLAIM FOR RELIEF

## Violation of the Fourth Amendment – Unlawful Search and Seizure
### (42 U.S.C. § 1983) (Plaintiff Orquidea Elizabeth Juarez Rivera)

72. Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

73. On November 16, 2022, Plaintiff Orquidea Elizabeth Juarez Rivera was seized by the officers who stopped her vehicle without reasonable suspicion.

74. Plaintiff Orquidea Elizabeth Juarez Rivera was detained for an unreasonable duration based on the facts and circumstances known to the officers at the time of the stop.

75. Plaintiff Orquidea Elizabeth Juarez Rivera was transported by the officers to the Residence.

76. The officers who seized Ms. Rivera and her vehicle did so at the direction of Defendant Galluzzi.

77. Defendant Galluzzi knew or reasonably should have known that his actions in directing Ms. Rivera's seizure were unsupported by probable cause.

78. Officers did not have probable cause to believe any crime had been committed by Ms. Rivera to justify a search of her vehicle.

79. Officers used a K-9 to search the vehicle and found no evidence or indicia of involvement in illegal narcotics trafficking.

80. After the K-9 gave no alert to drugs, weapons, or contraband, officers continued the search of Ms. Rivera's vehicle without probable cause.

81. The officers' search of Ms. Rivera's vehicle did not provide any evidence or indicia of involvement in illegal narcotics trafficking or other crime.

82. Despite no evidence of involvement in illegal narcotics trafficking or any other crime, officers kept Ms. Rivera in handcuffs and detained in the back of their police cruiser for approximately three (3) hours.

83. The officer's search of Ms. Rivera's residence, at the direction of Agent Sam Galluzzi, did not provide any evidence or indica of involvement in illegal narcotics trafficking.

84. The search warrant issued to Agent Sam Galluzzi did not provide any basis to support the arrest, search, or seizure of Ms. Rivera.

85. Officers intended to and did confine Ms. Rivera without her consent on November 16, 2022, for an unreasonable period of time at Defendant Galluzzi's direction.

86. The officers' searches and seizures of Ms. Rivera occurred because Defendant Galluzzi identified Ms. Rivera and/or her vehicle as involved in illegal narcotics trafficking and as targets for arrest, search, and seizure during the multi-agency law enforcement operation he directed on November 16, 2022.

87. Defendant Galluzzi so identified Ms. Rivera and/or her vehicle despite a complete lack of evidence to support reasonable suspicion or probable cause to believe Ms. Rivera was involved in illegal narcotics trafficking.

88. The unlawful search of Ms. Rivera's vehicle without probable cause violated Ms. Rivera's rights to be free from unreasonable searches.

89. The officers' searches and seizures of Ms. Rivera and her vehicle occurred because Defendant Galluzzi identified Ms. Rivera and/or her vehicle as involved in illegal narcotics trafficking and as targets for arrest, search, and seizure during the multi-agency law enforcement operation he directed on November 16, 2022.

90. Defendant Galluzzi so identified Ms. Rivera and/or her vehicle despite a complete lack of evidence to support reasonable suspicion or probable cause to believe Ms. Rivera was involved in illegal narcotics trafficking.

**SECOND CLAIM FOR RELIEF**
**Violation of the Fourth Amendment – Unlawful Seizure**
**(42 U.S.C. § 1983) (Plaintiffs Francisco Carranza, Orquidea Dayrina Rivera Peña and Jennyfer Dayrina Juarez Rivera**

91. Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

92. On November 16, 2022, Defendant Galluzi directed the detention of Plaintiffs Francisco Carranza, Orquidea Dayrina Rivera Peña, and Jennyfer Dayrina Juarez Rivera during the warrantless search of their residence.

93. Upon Francisco Carranza's arrival at the Residence, Officers pointed a gun at Mr. Carranza upon him leaving his vehicle.

94. Officers ordered Mr. Carranza not to leave his vehicle. Mr. Carranza reasonably believed that he could not leave his vehicle or the surrounding area due to officers' orders and show of force.

95. Upon Ms. Peña and Ms. Jennyfer Rivera's arrival at the Residence, officers ordered both of them not to leave their vehicle. Ms. Peña and Ms. Jennyfer Rivera reasonably believed that they could not leave their vehicle or the surrounding area due to officer's orders.

96. Officers show of authority to Mr. Carranza, Ms. Jennyfer Rivera and Ms. Peña made them reasonably believe they were detained and not free to leave their vehicles or the surrounding area.

97. Plaintiffs reasonably believed that if they were to leave their vehicles or the surrounding area they would be subject to arrest.

98. The search of the Residence did not provide any evidence or indica of a crime committed by the Plaintiffs to warrant their unlawful detention.

99. Officers knew or should have known that they lacked probable cause for these actions.

100. Officers intended to and did confine Plaintiffs without their consent on November 16, 2022.

101. The officers' seizure of Plaintiffs Francisco Carranza, Orquidea Dayrina Rivera Peña, and Jennyfer Dayrina Juarez Rivera's occurred because Defendant Galluzzi identified Plaintiffs and their residence as involved in illegal narcotics trafficking and as targets for arrest, search, and seizure

during the multi-agency law enforcement operation he directed on November 16, 2022.

102. Defendant Galluzzi so identified Plaintiffs Francisco Carranza, Orquidea Dayrina Rivera Peña, and Jennyfer Dayrina Juarez Rivera and their residence despite a complete lack of evidence to support reasonable suspicion or probable cause to believe Plaintiffs were involved in illegal narcotics trafficking.

**THIRD CLAIM FOR RELIEF**
**Violation of the Fourth Amendment – Unlawful Search and Seizure**
**(42 U.S.C. § 1983)**
**(Plaintiff's Francisco Carranza, Orquidea Elizabeth Juarez Rivera,**
**Orquidea Dayrina Rivera Peña and Jennyfer Dayrina Juarez Rivera)**

103. Plaintiffs repeat and reallege all paragraphs above, as if fully set forth herein.

104. Defendant Galluzzi knew or should have known that the search warrant he procured for the Residence was only obtained because reckless falsehoods were included in his affidavit falsely connecting the Residence with illegal narcotics trafficking.

105. Defendant Galluzzi knew or should have known that he obtained the search warrant for the Residence with a reckless disregard for the truth.

106. During the execution of the search warrant, officers searched the residence of all Plaintiffs, their bedrooms, and their personal belongings.

107. The search of the Plaintiffs' residence conducted at the direction of Defendant Galluzzi violated each Plaintiffs' rights to be free from unreasonable searches.

108. As a result of the search, extensive damage was done to the residence of Plaintiffs' and the personal belongings of each Plaintiff.

109. The manner of the search – including the use of explosives – was unreasonable based on the facts and circumstances known to the officers including Defendant Galluzzi.

110. As a result of the unreasonable search of the Residence, the Plaintiffs' suffered damage to their residence and personal belongings.

111. The officers' search of Plaintiffs Francisco Carranza, Orquidea Dayrina Rivera Peña, Orquidea Elizabeth Juarez Rivera, and Jennyfer Dayrina Juarez Rivera's residence occurred because Defendant Galluzzi identified Plaintiffs and their residence as involved in illegal narcotics trafficking and as targets for arrest, search, and seizure during the multi-agency law enforcement operation he directed on November 16, 2022.

112. Defendant Galluzzi so identified Plaintiffs Francisco Carranza, Orquidea Dayrina Rivera Peña, Orquidea Elizabeth Juarez Rivera and Jennyfer Dayrina Juarez Rivera and their residence despite a complete lack of evidence to support reasonable suspicion or probable cause to believe Plaintiffs were involved in illegal narcotics trafficking.

### DAMAGES

113.  As a result of each and every of the Defendant's acts above alleged, the Plaintiffs have suffered damages, including:

a.  Emotional distress;

b.  Deprivation of constitutionally protected liberty interests;

c.  Humiliation and damage to reputation;

d.  Attorney's Fees;

e.  Loss of enjoyment of life;

114.  Because the actions described herein reflect evil motive and intent or a reckless indifference to the federally protected rights of the Plaintiffs, an award of punitive damages is appropriate and necessary to deter similar wrongdoing by this defendant and others similarly situated.

WHEREFORE, the Plaintiff requests:

I.  That a jury be empaneled to try this case;

II.  A declaratory judgment that Defendant's conduct violated Plaintiff's' protected constitutional rights;

III.  Compensatory damages;

IV.  Punitive damages;

V.  Reasonable attorney's fees and litigation expenses;

VI.  Pre- and post-judgment interest;

VII.  Such other and general relief as the court deems just.

Respectfully submitted,

**/s/ Sarah Mansfield**
Sarah Mansfield #39476
Wesley Clark, #32611
BRAZIL CLARK, PLLC
2901 Dobbs Avenue
Nashville, TN 37211
615-730-8619
615-514-9674 (fax)
[wesley@brazilclark.com](mailto:wesley@brazilclark.com)
[sarah@brazilclark.com](mailto:sarah@brazilclark.com)