IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FRANCISCO CARRANZA, ORQUIDEA ELIZABETH JUÁREZ RIVERA, ORQUIDEA DAYRINA RIVERA PEÑA, and JENNYFER DAYRINA JUÁREZ RIVERA, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| SAM GALLUZZI, TYLER BRYSON AND JONATHAN MCGUIRE, | ) ) ) |
| Defendants. | ) |

Case No. 3:23-cv-00758
Judge Aleta A. Trauger

## MEMORANDUM

Before the court is the defendants' Motion to Dismiss (Doc. No. 69) all claims set forth against them in the plaintiffs' Second Amended Complaint ("SAC") (Doc. No. 56). For the reasons set forth herein, the motion will be granted in part and denied in part.

## I.     ALLEGED FACTS AND PROCEDURAL HISTORY

As set forth in the SAC, plaintiffs Francisco Carranza, Orquidea Dayrina Rivera Peña, Orquidea Elizabeth Juárez Rivera, and Jennyfer Dayrina Juárez Rivera[1] are all longtime residents of Davidson County, and they reside at 2248 Preserve Circle, Antioch, Tennessee. (SAC ¶¶ 4–7.) Defendants Sam Galluzzi and Tyler Bryson are both Special Agents for the Tennessee Bureau of Investigation ("TBI"), and Jonathan McGuire is an Agent for the 18th Judicial District Drug Task Force. (*Id.* ¶¶ 8–10.)

---

[1] Carranza and Peña are married. (SAC ¶ 78.) Orquidea Rivera and Jennyfer Rivera are their presumably grown daughters. (*Id.* ¶¶ 70, 79.)

In 2022, the defendants and other law enforcement officers were investigating a suspect, identified in the record as Suspect-1, who was believed to be coordinating narcotics distributions across multiple states. (*Id.* ¶¶ 12–13.) As it turned out, Suspect-1 lived in the same neighborhood and on the same street as the plaintiffs. Based on what appears to be recklessly poor police work, Galluzzi obtained a Search Warrant for a search of the plaintiffs' residence and was allegedly responsible (with Bryson and McGuire) for executing the Warrant and directing the search. During the course of the allegedly unlawful search, the plaintiffs' house was significantly damaged, and the plaintiffs were detained during the search.

The plaintiffs filed their original Complaint in July 2023, naming only Galluzzi as a defendant. (Doc. No. 1.) After Galluzzi moved to dismiss, they filed the FAC (Doc. No. 26) to clarify and provide further support for their claims, again naming only Galluzzi as a defendant. After the court denied Galluzzi's Motion to Dismiss the FAC (*see* Doc. Nos. 38, 39), the plaintiffs sought and obtained permission to file the SAC. The primary difference between the FAC and the SAC is the addition of the two new defendants, Bryson and McGuire, and new allegations tying these defendants to the events giving rise to the plaintiffs' claims. (*See* SAC ¶¶ 15–19, 21–25, 31, 33–35, 37, 42, 46, 49–51, 103–04, 110–11, 119, 120, 121, 125.) Like the FAC, the SAC sets forth claims under 42 U.S.C. § 1983 for (1) the unlawful search and seizure of plaintiff Orquidea Elizabeth Juárez Rivera; (2) the unlawful seizure and detention of the other three plaintiffs during the search of their residence; and (3) the unlawful search of the plaintiffs' residence pursuant to an invalid search warrant.

In his motion to dismiss the FAC, Galluzzi argued that (1) he was entitled to qualified immunity in connection with the search of the residence at 2248 Preserve Circle, because (a) the plaintiffs had no evidence that he stated a deliberate falsehood or showed reckless disregard for

the truth in the Affidavit submitted in support of the Search Warrant for their residence and (b) they could not show that the allegedly false or omitted information was material to the finding of probable cause; (2) the plaintiffs were lawfully detained during the execution of a valid search warrant; and (3) all of the plaintiffs' claims should be dismissed because there are no allegations that Galluzzi participated directly in any allegedly unconstitutional conduct. (*See generally* Doc. No. 31.) The court rejected all of these arguments, finding that: (1) the Search Warrant Affidavit contained materially false and unsupported statements; (2) the plaintiffs' allegations supported the inference that Galluzzi made these statements in reckless disregard of information in his possession negating probable cause; (3) once the false statements were omitted from the Search Warrant Affidavit, the remaining statements in the Affidavit were not sufficient to establish probable cause; (4) Galluzzi was not entitled to qualified immunity on the claim based on the search of the plaintiffs' home; (5) Galluzzi's argument in support of dismissal of the claim based on the unlawful detention of the plaintiffs during the search of their residence—that it was proper to detain them during the execution of a valid search warrant—failed because the FAC adequately alleged that the search warrant was not valid and that Galluzzi knew or should have known that it was not valid; and (6) the plaintiffs adequately alleged Galluzzi's personal involvement in obtaining and executing the Search Warrant and in the events that led to the seizure of each plaintiff. (*See generally* Doc. No. 38.)

This opinion presumes familiarity with the allegations in the FAC, most of which will not be reiterated here. The SAC contains essentially all of the same allegations regarding Galluzzi, along with some additional details regarding items in the investigative file and the other two defendants' involvement. Specifically, the plaintiffs allege that Agent Bryson arrested a suspect in the drug trafficking ring on October 13, 2022, and the arrested suspect stated that Suspect-1 lived

on Preserve Circle in Antioch, "possibly 2248 Preserve Cir[cle]." (SAC ¶ 15; *see also* Doc. No. 73 at 2.) This statement was transmuted in Galluzzi's Search Warrant Affidavit, which stated that the suspect-informant told investigators during an oral interview on October 13, 2022 that "Suspect-1 has a stash house located at 2248 Preserve Circle" in Antioch. (*See* SAC ¶ 30(b).)

On October 18, 2022, Agent Bryson authored an investigative report stating that he had conducted surveillance at 2248 Preserve Circle and observed various vehicles associated with individuals suspected of involvement in the drug trafficking organization ("DTO vehicles") parked "on the roadway directly in front of the residence." (SAC ¶ 19; *see also* Doc. No. 74.) As the plaintiffs point out, Bryson does not state that he observed any person exit any of those vehicles and enter the residence at 2248 Preserve Circle or, conversely, exit 2248 Preserve Circle and enter any of those vehicles. (SAC ¶ 25.) In addition, an aerial view of the neighborhood in which 2248 Preserve Circle is located shows that the only place where no houses are located and no driveways obstruct the ability to park is directly across the street from 2248 Preserve Circle. In other words, anyone visiting the neighborhood would know that persons parking vehicles "on the roadway directly in front of" 2248 Preserve Circle could be visiting any of the residences in the vicinity. (*See* SAC ¶¶ 17–18; *see also id.* ¶ 31 (asserting that all three defendants personally surveilled the residences on Preserve Circle and were familiar with the geographic and structural characteristics of the neighborhood, such that they knew or should have known that "any connection between vehicles parked on the street outside a house on Preserve Circle and the owners of the house [was] completely unreliable *absent verification of which house the vehicle's occupants actually entered*" (emphasis in original)).)

On October 20, 2022, Galluzzi conducted surveillance of Suspect-1 at a carwash, and, according to Galluzzi's investigative report, investigators then surveilled Suspect-1 to his

"suspected residence located at 2268 Preserve Circle." (*Id.* ¶ 20; *see also* Doc. No. 77 at 29.) Agent McGuire, on the same date, authored an investigative report stating that Suspect-1 was tailed "back to 2248 Preserve Circle, which is where his vehicle has been placed at multiple times throughout this investigation." (SAC ¶ 21; *see also* Doc. No. 75.) The Search Warrant Affidavit states only that Suspect-1 was followed on October 20, 2022 from the car wash to "one of his residences being 2248 Preserve Circle" in Antioch. (SAC ¶ 30(c).)

Agent McGuire authored an investigative report on October 24, 2022, stating that one of the DTO vehicles was observed "at the residence of 2248 Preserve Circle, . . . the known address of [Suspect-1]," and that agents observed several other DTO vehicles "in and/or in front of the residence of 2248 Preserve Circle." (SAC ¶¶ 23–24; Doc. No. 76.) The report does not indicate that investigators saw any suspect entering 2248 Preserve Circle or interacting with the residents of 2248 Preserve Circle. (SAC ¶ 25; Doc. No. 76.)

The plaintiffs further allege that the statement in Galluzzi's Affidavit and the statement in McGuire's report that Suspect-1 was surveilled from the carwash to 2248 Preserve Circle were both intentionally or recklessly false statements, given that Galluzzi's investigative report says Suspect-1 was observed at 2268 Preserve Circle. (SAC ¶¶ 32, 33.) They assert that Bryson's and McGuire's investigative reports also contained intentionally or recklessly false statements, insofar as both agents associated DTO vehicles with 2248 Preserve Circle simply because they were parked on the roadway in front of 2248 Preserve Circle, omitting the "obvious geographic fact that vehicles parked along Preserve Circle on the side of the street could belong to visitors of *any* of the residences" on the street. (*Id.* ¶¶ 34, 35.) They contend that Galluzzi's Affidavit contained a materially false statement, insofar as it stated that DTO vehicles were parked *in the driveway* of the plaintiffs' residence at 2248 Preserve Circle, which is not supported by any of the investigative

reports. (*Id.* ¶¶ 36, 39.) The plaintiffs point out that nothing in the investigative files—aside from one suspect-informant's guess at the address and officers seeing DTO vehicles parked on the roadway in front of or "'in and/or in front of" the house several times—suggests that investigators were in possession of any evidence that would support an inference that Suspect-1 resided at, visited, or interacted with the residents of 2248 Preserve Circle or that the residents of 2248 Preserve Circle were involved in the drug trafficking organization. (SAC ¶¶ 26–28.)

The plaintiffs also allege that all three defendants failed to perform any due diligence to verify whether any of the plaintiffs was associated with any members of the drug trafficking organization, that they "identified all Plaintiffs to other law enforcement officers and agencies as targets for searches and seizures," that they "organized and directed a multi-agency law enforcement operation for the purpose of searching and seizing the Plaintiffs and their property on November 16, 2022," and that they "authorized, encouraged, and approved of the searches and seizures conducted against the Plaintiffs . . . , knowing the only bases for these searches and seizures were the investigative reports they prepared which made false statements and/or material omissions." (*Id.* ¶¶ 42–44, 50–51, 103; *see also id.* ¶¶ 110–11, 119–21, 125, 128, 138, 142, 145, 150, 152.)

Galluzzi submitted his Search Warrant Affidavit and obtained the Search Warrant for the plaintiffs' residence on November 15, 2022. The court has already determined, based on the plaintiffs' allegations in the FAC and the parts of the investigative record in the plaintiffs' possession at the time, that the Search Warrant Affidavit contained intentionally or recklessly false and obviously unsupported statements and that, once these statements were removed from the Affidavit, the Affidavit did not contain sufficient facts to establish probable cause to search the plaintiffs' residence. Based on that conclusion, the court denied Galluzzi's Motion to Dismiss the

FAC.

The defendants now move to dismiss the SAC. (Doc. No. 69.) In support of their motion, the defendants assert, first, that they were entitled to rely on a judicially secured warrant establishing probable cause. (Doc. No. 70 at 4.) They acknowledge that Galluzzi swore out the Affidavit for the Search Warrant, but they argue that Bryson and McGuire did not make any statements to the judge issuing the warrant, and the allegations that their investigative reports contained false statements "are both conclusory and irrelevant to the analysis." (Doc. No. 70 at 6.) Otherwise, the defendants essentially raise all of the same arguments Galluzzi made in support of his Motion to Dismiss the FAC.

The plaintiffs, in their Response, argue that Galluzzi's position now is no better than it was the first time around. Regarding Bryson and McGuire, the plaintiffs argue that, "[a]s a direct result of Defendants' materially false statements within the TBI Investigative File and search warrant affidavit, Plaintiffs were subject to [an] unlawful search of their residence and unlawful detention during the execution of the invalid search warrant." (Doc. No. 78 at 2.) The plaintiffs do not actually argue that the Search Warrant was facially invalid. Instead, they maintain that, "[b]ut for the intentionally and/or recklessly made false statements made by Special Agent Galluzzi, Bryson and McGuire, there would have been no probable cause to secure the November 15, 2022, search warrant because there would have been no evidence of a crime." (SAC ¶ 49; *see also id.* ¶ 140.)

Regarding the seizure of Orquidea Elizabeth Juárez Rivera and search of her car, the plaintiffs allege that all three defendants directed her seizure, despite knowing that there was no probable cause to believe that she had committed a crime and that the Search Warrant for her residence did not give them any basis for seizing her or searching her car. (*Id.* ¶¶ 111–12, 118.)

The defendants' Reply reiterates their claim that new facts from the supplemented TBI file justify the filing of the renewed Motion to Dismiss and change the qualified immunity analysis as to Galluzzi. They also assert that the Search Warrant was not so lacking in indicia of probable cause that officers could not reasonably rely on it. (Doc. No. 79.)

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility"

and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider not only the complaint, but also any exhibits attached to it and exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted).

## III. DISCUSSION

### A. Claims Against Galluzzi

Regarding the claims against Galluzzi, while the landscape has shifted slightly in light of the defendants' production of additional documents from the investigative file, the shift is not significant enough to warrant reconsideration of the court's prior Order denying Galluzzi's Motion to Dismiss the FAC.

Galluzzi contends that the additional documents from the TBI file corroborate the statements in his Affidavit that the plaintiffs characterize as intentionally or recklessly false. They do not. First, Galluzzi claims that the plaintiffs offer no reason to believe that Galluzzi's statement that DTO vehicles had been seen parked in the driveway of 2248 Preserve Circle was false. (Doc. No. 70 at 6.) But the plaintiffs do, in fact, offer a reason to believe that the statement was false: the plaintiffs point out that the investigative reports on which Galluzzi's Affidavit was premised state only that DTO vehicles went "to" or were parked "on the roadway in front of" or "'in and/or in front of'" 2248 Preserve Circle. (*See* Doc. Nos. 74, 75, 76.) None of the reports says that the vehicles were parked in the *driveway* of 2248 Preserve Circle. This distinction is material.

Moreover, Galluzzi was in a position to know that no surveillance had ever tied any DTO vehicle directly to the plaintiffs' residence—that is, investigators had never seen any suspect enter or exit 2248 Preserve Circle or interact with the residents of 2248 Preserve Circle [2]—and that a vehicle's merely being parked in front of a house is not sufficient to tie it to the residents of that house. *Accord United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) ("The connection between the residence and the evidence of criminal activity must be specific and concrete, not vague or generalized. If the affidavit does not present sufficient facts demonstrating why the police officer expects to find evidence in the residence rather than in some other place, a judge may not find probable cause to issue a search warrant." (internal quotation marks and citation omitted)).

Galluzzi also takes issue, again, with the plaintiffs' challenging as intentionally or recklessly false his statement that a suspect-informant identified 2248 Preserve Circle as a stash house. He claims that the record corroborates this statement. Again, it does not. The investigative report backing up that claim states only that the suspect-informant believed that Suspect-1 "live[d] on Preserve Circle (*possibly* 2248 Preserve Cir[cle])." (Doc. No. 73 at 2 (emphasis added).) That small word, "possibly"—like the distinction between being parked in front of a house and being parked in the driveway—makes a difference. A single statement by a suspect-informant that Suspect-1 might "possibly" live at 2248 Preserve Circle does not support an affirmative conclusion

---

[2] Elsewhere in the TBI Investigative Report, officers clearly note when Suspect-1 (or other suspects) are seen entering or exiting specific residences. For example, in Galluzzi's October 21, 2022 surveillance report, in which he states that Suspect-1 was trailed from the carwash to "his suspected residence located at 2268 Preserve Circle," he states in the next paragraph that, following an intercepted telephone call, "[i]nvestigators surveilled [Suspect-1] leave his residence on Preserve Cir and travel to 385 David's Way." (Doc. No. 27 at 29.) When Suspect-1 arrived at that address, investigators watched as an unidentified female entered the passenger door of his car and then later "entered the neighboring house (387 [sic] David's Way)." (*Id.*) When investigators were surveilling another "possible stash house" at 120-B Robert Yoest Drive, the investigative report states that officers observed a suspect arrive at that residence and use a key to unlock the door and enter the residence. (*Id.*)

that Suspect-1 operated a stash house or maintained a residence at 2248 Preserve Circle, and certainly not without additional evidence of drug-related activities at that address—evidence that Galluzzi knew or should have known did not exist.

As for the conflicting reports regarding whether Suspect-1 was tailed from the carwash to 2248 Preserve Circle or 2268 Preserve Circle, the fact that there *were* conflicting reports should have put Galluzzi on notice that one of them was not correct and, therefore, that neither of them was reliable. It is not a stretch to conclude, as the plaintiffs do, that his selection of one over the other to support the Search Warrant for 2248 Preserve Circle was recklessly or intentionally false.

What remains clear from the record produced thus far is that the only evidence in Galluzzi's possession tying 2248 Preserve Circle to a drug trafficking enterprise consisted of (1) one suspect-informant's equivocal statement and (2) the fact that several DTO vehicles had been seen on several occasions parked in front of 2248 Preserve Circle. Neither the TBI file nor the Search Warrant Affidavit contains any information regarding the reliability of the suspect-informant and no suggestion that he or she saw drugs or drug trafficking activity inside 2248 Preserve Circle. Surveillance reports do not tie any DTO vehicle directly to 2248 Preserve Circle or to any resident of 2248 Preserve Circle. The Search Warrant Affidavit was threadbare, at best, and Galluzzi is plausibly alleged to have recklessly or intentionally exaggerated what little evidence existed in order to persuade a judge to issue the Search Warrant.

The arguments for dismissal of the claims against Galluzzi are essentially identical to those the court has already addressed in the context of ruling on his Motion to Dismiss the FAC. The court declines to reconsider its prior decision. Galluzzi has not shown that he is entitled to qualified immunity, and the Motion to Dismiss will be denied as to him.

## B.    Claims Against Bryson and McGuire

The defendants assert that Bryson and McGuire are entitled to qualified immunity. To

survive a motion to dismiss on qualified-immunity grounds, a complaint must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). The Complaint must allege with particularity "facts that demonstrate what [a] defendant did to violate the asserted constitutional right." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011)). The plaintiff bears the ultimate burden of showing that a defendant is not entitled to qualified immunity. *Id.* However, while qualified immunity questions should be answered at the earliest possible stage of litigation, the Sixth Circuit has cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015).

"Qualified immunity involves a two-step inquiry. First, viewing the facts in the light most favorable to the plaintiff, the court must determine whether the officer committed a constitutional violation." *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (citing *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002)). If so, the court must also "determine whether that constitutional right was clearly established at the time of the incident." *Id.* The court may address these questions in any order, but the answer to both must be yes. *Id.* at 648.

Under the second element, qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Consequently, a government official "will not be liable for mere mistakes in judgment, whether the mistake is one

of fact or one of law." *Hicks v. Scott*, 958 F.3d 421, 433 (6th Cir. 2020) (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978)). Thus, for example, "[a]n officer conducting a search is entitled to qualified immunity if 'a reasonable officer could have believed' that the search was lawful 'in light of clearly established law and the information the searching officer[] possessed.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 566 (2004) (Kennedy, J., dissenting)). This is an objective standard. *See Ziglar v. Abbasi*, 582 U.S. 120, 151, (2017) ("Whether qualified immunity can be invoked turns on the objective legal reasonableness of the official's acts. And reasonableness of official action, in turn, must be assessed in light of the legal rules that were clearly established at the time [the action] was taken. This requirement—that an official loses qualified immunity only for violating clearly established law—protects officials accused of violating extremely abstract rights." (internal quotation marks and citations omitted)). In sum, "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

Regarding Bryson's and McGuire's liability for the search, the plaintiffs allege that the investigative record shows that they made intentionally false statements and omitted important information from their investigative reports. Specifically, as set forth above, McGuire is alleged to have authored the October 20, 2022 report stating that Suspect-1 was trailed from the carwash to 2248 Preserve Circle, "where [his] vehicle has been placed at multiple times throughout this investigation." (SAC ¶ 21; Doc. No. 75.) McGuire also authored a report on October 24, 2022 stating that other DTO vehicles were observed "at" and "in and/or in front of" the "residence of 2248 Preserve Circle," "the known address of [Suspect-1]." (SAC ¶ 23; Doc. No. 76.) The plaintiffs fault McGuire for failing to state in his report the fact that no suspect had ever been seen entering or exiting 2248 Preserve Circle or interacting with the residents of 2248 Preserve Circle.

Bryson interviewed the suspect-defendant who stated that Suspect-1 lived on Preserve Circle—"possibly" at 2248 Preserve Circle. (SAC ¶ 15; Doc. No. 73 at 2.) He authored a report dated October 18, 2022, stating that he had conducted surveillance at 2248 Preserve Circle and observed several DTO vehicles parked "on the roadway directly in front of the residence." (SAC ¶ 19; Doc. No. 74.)

Bryson's case is easy: the plaintiffs do not plausibly allege that his statements are false or even misleading. In the first report, he was merely repeating what the suspect-informant said, not corroborating it. In the second, again, he was reporting what he saw. The plaintiffs have not pointed to any caselaw suggesting that Bryson had an obligation, in the course of drafting an investigative report, to make notes about what he did *not* see or to draw any conclusions from the available evidence. Nor can he be faulted for *Galluzzi's* misrepresentations in his Search Warrant Affidavit about what Bryson's reports said.

As for McGuire's reports, although they arguably contain false information, the SAC does not contain any factual allegations from which it may be reasonably inferred that the allegedly false statements (that Suspect-1 was trailed to 2248 Preserve Circle, that 2248 Preserve Circle was one of Suspect-1's "known" addresses, and that DTO vehicles were observed multiple times in, at or in front of 2248 Preserve Circle) were knowingly or intentionally false as opposed to merely mistaken. Moreover, as with Bryson, McGuire had no obligation to draw conclusions or make inferences in his surveillance reports based on what he did or did not see. In sum, the plaintiffs do not plausibly allege that Bryson or McGuire somehow violated their constitutional rights based on what they wrote in their investigative reports—and certainly not a clearly established right.

The plaintiffs also allege that Bryson's and McGuire's "false" reports contributed to the issuance of the Search Warrant. Even assuming McGuire's reports contain false or misleading

statements, however, the SAC also does not allege any facts connecting either Bryson or McGuire to the swearing out of the Search Warrant. Galluzzi signed the Search Warrant Affidavit and obtained the Search Warrant. Based on Galluzzi's review of the entire investigative file, as discussed above and in the Memorandum denying his Motion to Dismiss the FAC, Galluzzi knew or reasonably should have known that the entirety of the evidence in the TBI investigative file was not sufficient to provide probable cause to search 2248 Preserve Circle, but he packaged his Search Warrant Affidavit in such a way as to persuade the judge to issue the Search Warrant. McGuire's misstatements, standing alone, were not the problem. Bryson and McGuire cannot be faulted for the intentionally or recklessly false statements in the Search Warrant Affidavit or the unwarranted conclusions Galluzzi made in the Affidavit. As a result, Bryson and McGuire, unlike Galluzzi, were entitled to rely on the fact that the Search Warrant was issued by a neutral judicial magistrate. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) ("Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" (quoting *United States v. Leon*, 468 U.S. 897, 922–23 (1984)). The SAC contains no factual content that, if true, would establish that Bryson and McGuire were not acting in good faith.

The plaintiffs' claims all stem from the premise that the Search Warrant was invalid because, once Galluzzi's false statements are removed from it, it no longer provided probable cause for the search or detentions. (*See, e.g.*, SAC ¶ 49 ("But for the intentionally and/or recklessly made false statements made by Special Agent Galluzzi, Bryson and McGuire, there would have been no probable cause to secure the November 15, 2022, search warrant because there would have been no evidence of a crime."); *see also id.* ¶ 140 ("But for Defendant Galluzzi, Bryson and

McGuire's intentionally and/or recklessly made false statements, there would have been no probable cause to secure a search warrant and to conduct the search and seizure of [the plaintiffs].").) Because Bryson and McGuire were not responsible for the false statements in the Affidavit and were entitled to rely on a facially valid warrant issued by a neutral magistrate, the SAC fails to state colorable claims against them. In addition, to the extent that the plaintiffs' claims are based on allegations that McGuire and Bryson (along with Galluzzi) "organized and directed" the law enforcement operation the included the seizure of the plaintiffs and the search of their residence, those allegations are entirely conclusory and appear to be based wholly on the fact that Bryson and McGuire participated in the investigation of the drug trafficking organization and authored some of the investigative reports in the TBI file.

In sum, the facts as alleged by the plaintiffs do not establish that Bryson and McGuire violated the plaintiffs' clearly established constitutional rights or that they were not entitled to rely on the Search Warrant obtained by Galluzzi. The SAC fails to plausibly allege that these defendants violated the plaintiffs' rights under the Fourth Amendment, and they are entitled to qualified immunity.

## IV.    CONCLUSION

For the reasons set forth herein, the defendants' Motion to Dismiss the SAC (Doc. No. 69) will be denied as to Galluzzi and granted as to the other two defendants. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge